UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| EMILY A. FILMORE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:18 CV 1609 ACL |
| ) | |
| ANDREW M. SAUL,[1] ) | |
| Commissioner of Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM**

Plaintiff Emily Filmore brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of her application for Disability Insurance Benefits under Title II of the Social Security Act.

An Administrative Law Judge ("ALJ") found that, despite Filmore's severe impairments, she was not disabled as she had the residual functional capacity ("RFC") to perform work existing in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be reversed and remanded.

---

[1]After this case was filed, a new Commissioner of Social Security was confirmed. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is substituted for Deputy Commissioner Nancy A. Berryhill as the defendant in this suit.

## I. Procedural History

Filmore filed her application for benefits on August 1, 2015, claiming that she became unable to work on January 1, 2007. (Tr. 165.) In her Disability Report, Filmore alleged disability due to dermatomyositis,[2] fibromyalgia, chronic migraines, vitamin D deficiency, chronic shingles, repeated retina detachments, macular puckers, other eye problems, irritable bowel syndrome, neck pain and weakness, and autoimmune diseases. (Tr. 207.) Filmore was 30 years of age at her alleged onset of disability. (Tr. 17.) Her application was denied initially. (Tr. 89.) Filmore's claim was denied by an ALJ on January 18, 2018. (Tr. 10-19.) On July 26, 2018, the Appeals Council denied Filmore's claim for review. (Tr. 1-4.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Filmore raises the following claims: (1) "The ALJ erred in finding Filmore had an unrestricted capacity to maintain a full-time work schedule without excessive absences, and failed to articulate analysis despite the issue being central to Filmore's claim," and (2) "The ALJ erred in rejecting the treating physician opinion on grounds that applied only to one aspect of it, failing to apply the regulatory factors used when weighing such evidence." (Doc. 8 at pp. 7, 11.)

## II. The ALJ's Determination

The ALJ first found that Filmore last met the insured status requirements of the Act on

---

[2]Dermatomyositis is a progressive condition characterized by symmetric proximal muscular weakness with elevated serum levels of muscle enzymes and a skin rash, typically a purplish-red erythema on the face, and edema of the eyelids and periorbital tissue; affected muscle tissue shows degeneration of fibers with a chronic inflammatory reaction. *Stedman's Medical Dictionary,* 519 (28th Ed. 2006).

December 31, 2010. (Tr. 12.) He next found that Filmore did not engage in substantial gainful activity during the period from her alleged onset date of January 1, 2007, through her date last insured of December 31, 2010. *Id.* The ALJ concluded that, through her date last insured, Filmore had the following severe impairment: dermatomyositis. *Id.* The ALJ found that Filmore did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. *Id.*

As to Filmore's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she could only occasionally climb ramps and stairs. She could never climb ladders, ropes, or scaffolds. She could never work at unprotected, dangerous heights or around unprotected, dangerous machinery. She could not ambulate on unimproved terrain. She could not tolerate exposure to whole body vibration. She could only occasionally use her legs to operate foot controls. She could occasionally stoop kneel, crouch, and crawl. She needed to avoid concentrated exposure to extreme cold and heat. She could perform simple, repetitive tasks.

(Tr. 13.)

The ALJ found that Filmore was unable to perform any past relevant work through the date last insured, but was capable of performing other jobs existing in significant numbers in the national economy, such as document preparer, gager, and surveillance system monitor. (Tr. 17-18.) The ALJ therefore concluded that Filmore was not under a disability, as defined in the Social Security Act, at any time from January 1, 2007, the alleged onset date, through December 31, 2010, the date last insured. (Tr. 19.)

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability insurance benefits protectively filed on August 1, 2015, the claimant was not disabled under sections 216(i) and 223(d) of the Social Security Act through December 31, 2010, the last date insured.

*Id.*

## III. Applicable Law

### III.A. Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and

> non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); s*ee also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

**III.B. Determination of Disability**

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot,

considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country."   42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.   20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).   First, the Commissioner will consider a claimant's work activity.   If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.   20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities."   *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003).   "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities."   *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."   20 C.F.R. § 416.921(b).   These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, reaching out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.   *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).   "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work."   *Page v.*

*Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is

other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n. 5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). The Commissioner must then rate the degree of functional loss resulting from the impairments. *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities. *See id.* Next, the Commissioner must determine the severity of the impairment based on those ratings. *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c). If the impairment is severe, the Commissioner must

determine if it meets or equals a listed mental disorder. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders. *See id.* If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

## IV. Discussion

As an initial matter, the Court notes that Filmore's insured status is relevant in this case. Filmore alleged an onset of disability date of January 1, 2007. Her insured status expired on December 31, 2010. To be entitled to benefits under Title II, Filmore must demonstrate she was disabled prior to December 31, 2010. *See* 20 C.F.R. § 404.130. Thus, the period under consideration in this case is from January 1, 2007, through December 31, 2010.

Filmore first argues that the ALJ erred in failing to make a finding on the issue of Filmore's need for an excessive rate of absenteeism due to her impairments. She contends that during the period of January 2010 through December 2010, her necessary treatment alone required her to be absent from work two days a month. Filmore argues that this rate of absenteeism is supported by an opinion of treating specialist Dr. Maz. In her related second claim, Filmore argues that the ALJ erred in rejecting Dr. Maz's opinion.

By way of background, Filmore was diagnosed with dermatomyositis in 2003 and received treatment for related symptoms from John Costello, M.D., throughout the relevant period. (Tr. 584, 522-26, 1619-48.) In November 2009, Filmore presented to the Mayo Clinic for an evaluation. (Tr. 584.) She complained of a "constellation of symptoms including headache, recurrent zosteriform eruptions, and a history of dermatomyositis." *Id.* Filmore

reported that she had initially taken Plaquenil[3] and quinacrine in St. Louis, which seemed to help her skin, but she stopped it after six months secondary to side effects including fatigue and muscle weakness. (Tr. 585.) Filmore was diagnosed with history of dermatomyositis with predominant cutaneous findings. (Tr. 586.) She was noted to have significant skin involvement and required systemic medication. *Id.* Filmore was started on Plaquenil. *Id.* In January 2010, Filmore reported that she was experiencing adverse symptoms from the Plaquenil. (Tr. 609.) Dr. Peter Bosch recommended that Filmore undergo IVIG[4] infusions once monthly for one year followed by methotrexate.[5] (Tr. 591, 609, 637.) In August 2010, Dr. Costello indicated that Filmore had experienced the following improvements with IVIG therapy: ability to lift her four-year-old daughter who weighed 36 pounds, get up from sitting, climb stairs, grasp things with her hands, improved rash, no open skin sores, ability to get up from the floor, decreased fatigue, decreased pain, better sleep, and the ability to start running. (Tr. 1619.) Filmore returned to the Mayo clinic for follow-up in September 2010. (Tr. 636-39.) Dr. Maz indicated that Filmore had "responded quite well to IVIG," and she denied any current complaints suggestive of active dermatomyositis. (Tr. 637.) Dr. Maz recommended that Filmore continue IVIG infusions every four weeks through the end of the year, and start

---

[3] Plaquenil is a disease-modifying antirheumatic drug indicated for treatment of certain auto-immune diseases. *See* WebMD, http://www.webmd.com/drugs (last visited September 19, 2019).

[4] Intravenous immunoglobulin therapy ("IVIG") is indicated for people with weakened immune systems or other diseases, such as lupus, myositis, or neurological diseases. Liquid immunoglobulin is taken from the blood plasma of donors and injected intravenously to help strengthen the immune system. *See* WebMD, http://www.webmd.com/drugs (last visited September 19, 2019).

[5] Methotrexate is an antimetabolite indicated for the treatment of cancer or to control severe psoriasis or rheumatoid arthritis that has not responded to other treatments. It works by slowing or stopping the growth of cancer cells and suppressing the immune system. *See* WebMD, http://www.webmd.com/drugs (last visited September 19, 2019).

methotrexate. (Tr. 638.) Dr. Maz indicated that Filmore would pursue treatment through her rheumatologist in St. Louis and could consider follow-up at the Mayo Clinic in a year. (Tr. 638-39.) Filmore established care with a rheumatologist in St. Louis in October 2010, at which time she was started on methotrexate and continued IVIG therapy. (Tr. 722-23.)

On September 15, 2015, Dr. Maz authored a letter, in which he states that he began seeing Filmore at the Mayo Clinic in Scottsdale, Arizona in 2009 "when her dermatomyositis was not well-controlled and she had proximal weakness and pain." (Tr. 1373.) Dr. Maz stated that Filmore's disease improved with further management and medication adjustment. *Id.* He started seeing Filmore again in April 2013, when his practice moved to Kansas City, and "since then she has been relatively well-controlled." *Id.* Dr. Maz stated that, although Filmore's disease activity has improved, "she still suffers from muscle weakness, fatigue, arthralgia, and myalgia." *Id.* Because Filmore has co-morbidities, she also follows with neurology, physical medicine rehab, dermatology, and hematology. *Id.* Dr. Maz stated that, due to Filmore's "complex medical history and treatment with IVIG infusions twice monthly it would be difficult for [Filmore] to hold a job for any length of time due to appointments and treatment including but not limited to IVIG and physical therapy." *Id.*

"It is the ALJ's function to resolve conflicts among the various treating and examining physicians." *Tindell v. Barnhart,* 444 F.3d 1002, 1005 (8th Cir. 2006) (quoting *Vandenboom v. Barnhart,* 421 F.3d 745, 749-50 (8th Cir. 2005) (internal marks omitted)). The opinion of a treating physician will be given "controlling weight" only if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." *Prosch v. Apfel,* 201 F.3d 1010, 1012-13 (8th Cir. 2000). The record, though, should be "evaluated as a whole." *Id.* at 1013 (quoting *Bentley v. Shalala,*

52 F.3d 784, 785-86 (8th Cir. 1997)). The ALJ is not required to rely on one doctor's opinion entirely or choose between the opinions. *Martise v. Astrue,* 641 F.3d 909, 927 (8th Cir. 2011). Additionally, when a physician's records provide no elaboration and are "conclusory checkbox" forms, the opinion can be of little evidentiary value. *See Anderson v. Astrue,* 696 F.3d 790, 794 (8th Cir. 2012). Regardless of the decision the ALJ must still provide "good reasons" for the weight assigned the treating physician's opinion. 20 C.F.R § 404.1527(d)(2).

The ALJ stated that Dr. Maz's opinion that it would be difficult for Filmore to hold a job due to her medical history and treatment "merits no weight because it is an opinion reserved to the Commissioner." (Tr. 17.) He explained that, to assess whether a claimant is able to work under Social Security law, "the undersigned must evaluate more than medical considerations; the undersigned must also evaluate vocational considerations, which are outside the scope of medical expertise." *Id.*

Filmore argues that the ALJ erred in failing to discuss further the issue of Filmore's absenteeism. The undersigned agrees.

The ALJ concluded that, through the date last insured, Filmore retained the functional capacity to perform sedentary work with the following additional limitations:

> she could only occasionally climb ramps and stairs. She could never climb ladders, ropes, or scaffolds. She could never work at unprotected, dangerous heights or around unprotected, dangerous machinery. She could not ambulate on unimproved terrain. She could not tolerate exposure to whole body vibration. She could only occasionally use her legs to operate foot controls. She could occasionally stoop kneel, crouch, and crawl. She needed to avoid concentrated exposure to extreme cold and heat. She could perform simple, repetitive tasks.

(Tr. 13.)

RFC is what a claimant can do despite her limitations, and it must be determined on the

basis of all relevant evidence, including medical records, physician's opinions, and the claimant's description of her limitations. *Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001). Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, a claimant's RFC is a medical question. *See Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001); *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000). Therefore, an ALJ is required to consider at least some supporting evidence from a medical professional. *See Lauer*, 245 F.3d at 704 (some medical evidence must support the determination of the claimant's RFC); *Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007) (the RFC is ultimately a medical question that must find at least some support in the medical evidence in the record). However, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

The ALJ explained that the record does not support the degree of frequency of symptoms that Filmore alleged during the period at issue. (Tr. 15.) He stated that, to the contrary, Filmore and her treating physicians reported that she was doing well and that her treatment was effective. *Id.* The ALJ also found that Filmore's activities during the relevant period were inconsistent with her allegations of disability. (Tr. 16.) Specifically, he cited the following evidence:

- Filmore went on vacations in October 2008 and August 2009 (Tr. 351, 517)
- She reported exercising at a gym in December 2008 (Tr. 354)
- In November 2009, she reported working part-time as an attorney as well as working as a children's book author (Tr. 585, 622)
- In 2010, she went on vacations to Arizona four times, New Mexico, Nevada, and California, and went hiking in Arizona (Tr. 637)

- In January 2010, she told her treating physician she was a stay-at-home mother working on writing children's books (Tr. 612)
- In September 2010, she reported that she had started running without any difficulty (Tr. 637)
- She cared for her young child, whose age ranged from 1 to 4 during the relevant period (Tr. 1619)

(Tr. 16.)

To be sure, the above activities cited by the ALJ are significant and are relevant in determining whether Filmore's subjective allegations are consistent with the record. In formulating Filmore's RFC, however, the ALJ failed to fully consider all of Filmore's limitations. The ALJ does not dispute that Filmore suffers from dermatomyositis, a complicated medical condition for which she has been treated for many years by many specialists locally and at the Mayo Clinic in Scottsdale, Arizona. The ALJ accurately notes that Filmore's condition improved with treatment. The ALJ did not discuss whether the alleged work absences stemming from the IVIG therapy were supported by the record, or why work absences were not included in Filmore's RFC.

When Dr. Bosch recommended IVIG therapy in January 2010, he indicated that it would be administered as follows: the first treatment would be administered on four consecutive days, followed by two-day treatments every four weeks. (Tr. 609.) Filmore followed this schedule, undergoing IVIG therapy monthly for twelve months—January 2010 through December 2010. (Tr. 34.) Filmore testified that each IVIG treatment session took twelve hours and she was incapacitated for at least the days of the treatment. (Tr. 36.) Despite this evidence, the ALJ does not address the impact the treatment would have on Filmore's work attendance. Filmore

further argues that she experienced long periods of extreme fatigue, frequent migraine headaches, and recurrent eye problems during the relevant period that would have resulted in additional work absences.

In *Baker v. Apfel*, 159 F.3d 1140, 1146 (8th Cir. 1998), the claimant's treating physician expressed the opinion that he would "miss a great deal of work." This physician's opinion was supported by "page after page of medical records detailing Baker's injections of Demerol, after which he must be driven home by someone else due to the effects of the drug." *Id*. The record also established that Baker received 60 Demerol injections over the course of six months, and that he would be absent at least twenty-six days during the year. *Id.* Because the ALJ failed to consider that Baker would be absent from the workplace to receive these injections, the Eighth Circuit reversed and remanded the case.

Here, as in *Baker*, the ALJ failed to consider Filmore's work absences resulting from her IVIG treatment. The ALJ rejected Dr. Maz's opinion that it would be difficult for Filmore to maintain employment due to her frequent absences from her treatment on the basis that the issue of a claimant's ability to work was reserved for the Commissioner and involved consideration of vocational factors. The ALJ, however, neglected to evaluate the issue any further and did not include absences in Filmore's RFC. If the ALJ did not believe Filmore's IVIG treatment would necessarily result in two or more work absences a month, there is no indication of this in his opinion. Because the medical evidence and Filmore's testimony support this degree of absenteeism, at least for the twelve-month period of 2010, the ALJ erred in not discussing this issue. This error is not harmless, as the vocational expert testified that competitive work would be precluded if an individual would consistently miss two or more days of work a month. (Tr. 61-62.)

As a result, the RFC formulated by the ALJ lacks the support of substantial evidence and this matter will be remanded. *See Gude v. Berryhill*, 2:16-CV-79-SPM, 2018 WL 1470455, at *5 (E.D. Mo. Mar. 26, 2018) ("Because the ALJ failed to make it clear that she considered Dr. Waheed's opinion regarding absenteeism and failed to give good reasons for discounting that opinion, and because the decision not to include Dr. Waheed's opinion on work absences in the RFC potentially affected the outcome of the case, remand for further consideration is required").

## Conclusion

In sum, the ALJ erred in failing to address the issue of Filmore's absenteeism related to and following the treatments for her severe impairment during the relevant period, resulting in an RFC unsupported by substantial evidence.

For the reasons discussed above, the Commissioner's decision is not based upon substantial evidence on the record as a whole and the cause is therefore remanded to the Commissioner for further consideration in accordance with this Memorandum and Order. Upon remand, the ALJ must fully evaluate the medical record as to Filmore's projected absenteeism resulting from IVIG treatments during the relevant period; if necessary, obtain the services of a medical expert to provide an opinion as to the administration and recovery time for individuals receiving IVIG therapy; and formulate an RFC supported by substantial evidence. The ALJ should then obtain testimony from a vocational expert to determine whether Filmore was capable of performing work existing in substantial numbers in the national economy during the relevant period.

**/s/** Abbie Crites-Leoni
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 20th day of September, 2019.